LEON WALDMAN, MARTIN WALDMAN AND J. M. FRIED, PLAINTIFFS-APPELLANTS, v. ALCAN ALUMINUM CORPORATION, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 24, 1971—Decided June 1, 1971.

Before Judges GOLDMANN, LEONARD and FRITZ.

*Mr. Bruce Lubitz* argued the cause for appellants (*Messrs. Hannoch, Weisman, Stern & Besser,* attorneys).

*Mr. Steven B. Hoskins* argued the cause for respondent (*Messrs. McCarter & English,* attorneys).

The opinion of the court was delivered by

GOLDMANN, P. J. A. D. Plaintiffs appeal, by leave granted, from an order entered by Chancery Division Judge Mintz staying this litigation in its entirety pending arbitration pursuant to the New Jersey Arbitration Act, *N. J. S. A.* 2A:24–1 *et seq.,* and referring certain of the disputes to public accountants for decision.

Plaintiffs, together with William Fried and William Waldman, were the principals and employees of Wallmaster, a concern engaged mainly in the sale of aluminum siding. Wallmaster sold its business to National Distillers in 1964. In 1965 defendant Alcan Aluminum Corporation purchased Wallmaster, which became its Brixite Division.

On January 1, 1966 plaintiffs William Fried and William Waldman entered into a profit-sharing employment agreement with defendant fixing their respective annual salaries. The agreement also provided that Leon Waldman was to receive 6¼% of the annual increased earnings, Martin Waldman a like percentage, and J. M. Fried 12½%. The calendar year 1965 was selected as the "Base Period." "Base Period Earnings" were defined as the net earnings before taxes, and "Adjusted Base Period Earnings" as the "Base Period Earnings" after making, among others, the following adjustment:

Retroactive increase to 1st January 1965 in the transfer price of bare aluminum strip to two cents per pound below the Company's [Alcan's] base list prices of such strip at the time of transfer.

Earnings for years subsequent to 1965 were to be determined by deducting from gross sales revenues: (1) all selling, sales administration, sales promotion, advertising and distribution

expenses; (2) the "standard manufacturing cost" — carefully defined in the agreement — of the products sold (the raw material to be used was purchased by plaintiffs from defendant), and (3) interest at the rate paid by the company on bank borrowings on accounts receivable and inventories of finished goods. "Increased earnings" was defined as the amount by which the earnings for the year concerned exceeded the adjusted base period earnings.

The agreement contained the following arbitration clause:

9. Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in the City of Cleveland in accordance with the rules then obtaining of the American Arbitration Association *except* any disputes as to the amount of any payment under Section 2(b) hereof which shall be decided as expressly provided in Schedule A by the Company's Independent Public Accountants.

Schedule A attached to the agreement provided that

* * * In case of dispute as to the amount of each payment the matter shall be referred to the Company's Independent Public Accountants for decision and their decision shall be final.

Plaintiffs' term of employment under the agreement was for a period of four years, from January 1, 1966 to December 31, 1969. Paragraph 3 provided that

* * * Each of the Employees hereby undertakes and agrees that during such term and for two years following the end of such term, he will not compete directly or indirectly, or participate as a director, officer, employee, agent representative or otherwise or as a stockholder, partner or joint venturer or have any direct or indirect financial interest (including without limitation, the interest of a creditor in any form) in any business competing directly or indirectly with the building products business, present and future (or any part of any such building products business), of the Company or of any other company of the Aluminum Limited Group, provided that, if, during the term of employment of the Employees under this Agreement the employment of any of the Employees is terminated for cause pursuant to Section 5 hereof, this provision shall apply for the Employee concerned to the date of termination and for two years following such date. * * *

A dispute having arisen as to the amounts due plaintiffs under the agreement, they instituted a Chancery Division action in May 1970, following the termination of their employment. The first count demanded judgment directing defendant to account to plaintiffs for all earnings during the four years from 1966 through 1969, to grant plaintiffs and their agents access to all books and records pertinent to the determination of those earnings, and to pay them the amount found to be justly due and owing. The second count sought a declaration of the invalidity of the paragraph 3 covenant not to compete. Alcan moved for an order staying the action pursuant to the Arbitration Act, *N. J. S. A.* 2A:24-4, pending arbitration of the issues raised by the complaint. Judge Mintz, after considering the briefs and hearing oral argument, granted the motion and entered an order which provided that (1) "all disputes concerning the interpretation of the agreement which in any way touch upon, effect or pertain to the amount of any payment" due plaintiffs, as well as any disputes as to the amount of any payment due, be decided by the company's independent public accountants, as provided in paragraph 9 and Schedule A of the agreement, and (2) any other controversy relating to the agreement, including the dispute as to the validity of the covenant not to compete, be in the first instance submitted to arbitration, as provided in paragraph 9.

On the argument of defendant's motion, plaintiffs contended that public policy dictated that the restrictive covenant issue be decided by the courts of this State and, further, that defendant's accountants were not empowered to resolve any disputes relating to the interpretation of the agreement. They project the same contentions on this appeal.

Paragraph 9 of the agreement, quoted above, is altogether clear in providing that all controversies, with the single exception of disputes over the amount of payments, shall be settled by arbitration. Plaintiffs, who were fully experienced businessmen and in a position to insist upon reasonable terms, readily accepted paragraph 9. That pro-

vision was without limitation as to the kind of controversy or claim that should go to arbitration. We agree with Judge Mintz in his determination that the covenant not to compete set out in paragraph 3 should, in the first instance, be determined by arbitration. Plaintiffs rely on *Solari Industries, Inc. v. Malady,* 55 *N. J.* 571 (1970). That case concerned itself with the question of whether a noncompetition provision without geographical limit could be partially enforced or was invalid on its face. *Cf. Whitmyer Bros., Inc. v. Doyle,* 58 *N. J.* 25 (1971). It did not address itself to the question presented here — whether the covenant not to compete is to be reviewed in the first instance by arbitrators, as called for by the agreement.

We are not convinced that the arbitrators are less suited than is the Chancery Division to make a factual determination of whether the covenant not to compete is reasonable in light of the position of the parties and the nature of the business involved. And even if that determination be deemed to involve a question of law, arbitration is nonetheless proper. *Milk Drivers, etc., Local 680 v. Cream-O-Land Dairy,* 39 *N. J. Super.* 163, 177–178 (App. Div. 1956).

We cannot, however, agree with that part of the order under review which provides that any and all disputes concerning the interpretation of the agreement which in any way touch upon or affect the amounts due plaintiffs under the agreement should be decided by the company's independent public accountants.

Paragraph 9 does not grant the accountants the broad power of construing the agreement. There will have to be an interpretation of the literal language of the agreement, and in construing that language consideration will have to be given to the subject matter as well as to the object and purpose of the agreement. *Cf. Tessmar v. Grosner,* 23 *N. J.* 193, 201 (1957). Consideration will also have to be given to such other determinants as the practical construction the parties gave to their agreement. *Cf. Journeyman Barbers, etc., Local 687 v. Pollino,* 22 *N. J.* 389, 394 (1956). All

though accountants possess an expertise in mathematically ascertaining the amounts that might be due plaintiffs as well as in accepted accounting procedures, they have no special expertise in construing the contract provisions that should enter into determining what factors are to be included in that calculation. As we read the agreement, the intent of the parties was that the company's accountants would perform their function only after all disputes as to the interpretation of the agreement were resolved by the arbitrators.

Accordingly, the order should be modified so as to provide that all disputes with regard to the interpretation of the agreement which in any way affect or pertain to payments due plaintiffs are to be settled by the arbitrators in the first instance. The accountants will then calculate the actual amounts due in light of that interpretation.

The order, as so modified, is affirmed.